UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ABDARIUS MOHAMED, et al.,

    Plaintiffs,

v.

UNITED STATES SEAFOOD, LLC, et al.,

    Defendants.

CASE NO. C07-1377RAJ

ORDER

## I. INTRODUCTION

This matter comes before the court on Plaintiff Abdirashid Barkhadle's motion for partial summary judgment (Dkt. # 43). No party has requested oral argument, and the court finds the motion suitable for disposition on the basis of the written materials the parties submitted in support of and in opposition to the motion. For the reasons stated below, the court DENIES the motion, and orders the parties to address several issues arising from this motion as they prepare their pretrial submissions.

## II. BACKGROUND

Mr. Barkhadle was a crewman aboard a fish processing vessel owned and operated by Defendants. There is no dispute that Mr. Barkhadle suffered serious injuries to his right hand in June 2007 while manning a "Toyo 550" fish head cutter. The Toyo 550 is a machine that uses a rotating saw blade to remove the heads of whole fish. On the day he

ORDER – 1

was injured, Mr. Barkhadle was receiving fish from an overhead chute and placing them on a conveyer belt that would feed them into the Toyo 550. There is no suggestion that, in his position at the top of the conveyor belt, Mr. Barkhadle was in any danger of injury from the Toyo 550.

Unfortunately, a malfunction in a conveyor system that removed the severed fish heads from beneath the Toyo 550 led Mr. Barkhadle to move closer to the machine. Workers were told to stop fish processing operations while others addressed the conveyor problem. During the stoppage, Mr. Barkhadle noticed that fish heads had collected beneath the Toyo 550, and he left his position at the top of the feeder belt to address the problem. He was using his feet to kick the fish heads into a disposal area when he lost his balance as the ship listed. His hand went into the front of the Toyo 550, through the same path that a fish would travel, and into the spinning blade of the machine. The machine completely severed his hand, including three fingers and part of his thumb.

Defendants assert that Mr. Barkhadle is, at a minimum, partially at fault for his injuries. They allege that he was instructed to turn off the Toyo 550 whenever he left his position at the top of the machine's feeder belt, and that if he had followed those instructions, he would not have been injured. *Compare* Prescott Decl. ¶ 5 (asserting that supervisors instructed Mr. Barkhadle to turn off the Toyo 550 whenever he left it), Garner Decl. ¶ 2 (same), *with* Barkhadle Decl. ¶ 5 (denying that he was told to turn off the machine), Browne Decl., Ex. 1 (Barkhadle Depo. at 59:5-8) (same). Nothing in this order should be construed as an evaluation of the evidence supporting Defendants' argument that Mr. Barkhadle is to blame for his injuries.

In this motion, Mr. Barkhadle seeks a ruling that Defendants cannot, as a matter of law, rely on comparative fault to reduce their liability to Mr. Barkhadle. Determining whether Mr. Barkhadle prevails in this motion requires a closer examination of both the law and the facts. The court now turns to that examination.

ORDER – 2

## III. ANALYSIS

On a motion for summary judgment, the court must draw all inferences from the admissible evidence in the light most favorable to the non-moving party. *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000). Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party must initially show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The opposing party must then show a genuine issue of fact for trial. *Matsushita Elect. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party must present probative evidence to support its claim or defense. *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991). When confronted with purely legal questions, the court does not defer to the non-moving party.

The legal underpinnings of Mr. Barkhadle's motion are uncontested. The parties concede that under Ninth Circuit law, where a plaintiff's injury is due in part to a violation of an applicable safety regulation, the defendant may not rely on comparative fault to reduce its liability to plaintiff. *Fuszek v. Royal King Fisheries, Inc.*, 98 F.3d 514, 517 (9th Cir. 1996). A plaintiff must prove five elements to invoke the *Fuszek* rule:

> (1) a violation of Coast Guard regulations, (2) the plaintiff's membership in the class of intended beneficiaries of the regulations, (3) an injury of a type against which the regulations are designed to protect, (4) the unexcused nature of the regulatory violation, and (5) causation.

98 F.3d at 517 (quoting *Smith v. Trans-World Drilling Co.*, 772 F.2d 157, 160 (5th Cir. 1985)). The court's analysis of this motion focuses on whether Mr. Barkhadle has established a violation of a Coast Guard regulation.

Although the parties do not dispute the contours of the *Fuszek* rule, the record reveals issues of material fact that prevent the court from entering summary judgment.

ORDER – 3

The court begins with the Coast Guard regulation that Mr. Barkhadle asserts as the basis for his invocation of the *Fuszek* rule:

> Suitable hand covers, guards, or railing must be installed in way of machinery which can cause injury to personnel, such as gearing, chain or belt drives, and rotating shafting. This is not meant to restrict necessary access to fishing equipment such as winches, drums, or gurdies.

46 C.F.R. § 28.215(b). The regulation by its terms requires only "[s]uitable hand covers," and expressly recognizes that shipowners must be able to permit "necessary access" to fishing equipment. The plain language of the regulation appears to recognize that not all safety measures are "suitable," and that safety measures must not interfere unduly with the function of the equipment.

Neither party offers any authority for an interpretation of the Coast Guard regulation in a manner inconsistent with its plain language. The court is aware of no authority construing the regulation. The *Fuszek* court considered the same regulation, but did not interpret it. 98 F.3d at 516. Instead, the *Fuszek* court found that the evidence adduced *at trial* showed that the vessel was "in unexcused violation of a Coast Guard safety regulation that was designed not only to protect members of the class to which [the plaintiff] belonged, but also to prevent the type of injury he sustained." *Id.* at 517. The court of appeals noted evidence that the machine that caused the plaintiff's injury was "a piece of junk," that "jammed frequently," and that the "factory superintendent adopted the policy of clearing jams [with their hands] without turning the machine off." *Id.* at 515. Where seamen are "frequently" required to insert their hands into dangerous machinery, guards are particularly important, and their absence would violate even the least restrictive interpretation of the Coast Guard regulation. In this case, by contrast, the record suggests that a seaman's hand would rarely come near the cutting blade of the Toyo 550 in normal operations.

ORDER – 4

Applying the Coast Guard regulation as construed above, this court concludes that issues of material fact prevent it from deciding whether Defendants complied with the regulation. First, the court notes that the record establishes that the blade on the Toyo 550 is not wholly unguarded. Mechanisms that limit access from the front and side of the blade are in place. The question before the court is whether Defendants should have had better guards in place to comply with the Coast Guard regulation. Sam Windsor, Mr. Barkhadle's expert, proposes several designs for guards that would, in his view, prevent injuries like the one Mr. Barkhadle suffered. Windsor Decl., Ex. 1 at 4-5. Defendants offer the opinions of Alan Topinka in an effort to counter Mr. Windsor's views, but the court finds nothing in Mr. Topinka's submissions that contradicts Mr. Windsor. Instead, Mr. Topinka opines that the Toyo 550 manufacturer, not Defendants, should be responsible for designing additional guards. Topinka Decl., Ex. 1 at 12-13. He notes that cutting machines for land-based food processing use exposed cutting blades, but does not acknowledge the different safety needs of a seagoing vessel. *Id.* at 7-10. He opines that the Toyo 550 is an "industry standard" machine, but does not explain how this bears on assessing whether the machine is properly guarded. *Id.* at 7. He inexplicably asserts that the Occupational Safety and Health Administration's failure to cite Defendants for their Toyo 550 machines during a general ship inspection in January 2007 is relevant to whether they were adequately guarded. *Id.* Most importantly, however, he offers no rebuttal to Mr. Windsor's description of specific guards and safety measures that would have prevented Mr. Barkhadle's injury. Fortunately for Defendants, Matthew Doherty, one of their managers, addresses Mr. Windsor's assertions. He claims that the guards Mr. Windsor proposes would be impractical because they would unduly limit the Toyo 550's ability to adjust for different fish sizes, and would create additional safety hazards. Doherty Decl. ¶¶ 21-22. He also notes that Mr. Barkhadle's injury did not arise in the normal course of operating the Toyo 550, and that the slim risk of such an injury does not warrant the cumbersome measures that Mr. Windsor proposes. *Id.* The court finds that

ORDER – 5

Mr. Windsor's and Mr. Doherty's opinions[1] create a factual dispute over the availability of "suitable hand covers" for the Toyo 550 that a jury must resolve.[2] This issue is a sufficient basis for denying Mr. Barkhadle's motion for summary judgment.

Mr. Barkhadle asserts that considering "practicality" of additional guards on the Toyo 550 is "legal and factual nonsense." Dkt. # 55 at 8. This bluster, however, finds no support in case authority. Mr. Barkhadle relies on two cases considering a construction regulation that required specific safety measures when other measures were "impractical." *Brennan v. S. Contractors Serv.*, 492 F.2d 498, 499 (5th Cir. 1974) (citing 29 C.F.R. 1926.105(a) (1973)); *Brock v. L.R. Willson & Sons, Inc.*, 773 F.2d 1377, 1380 n.2 (D.C. Cir. 1985) (same). Although both courts considered the meaning of "impractical" as the term was used in the regulation, neither offered analysis that bears on the Coast Guard regulation before this court. *Brennan*, 492 F.2d at 501; *Brock*, 773 F.2d at 1383-86. Similarly misplaced is Mr. Barkhadle's reliance on *Bliss & Laughlin Indus. Inc. v. Sec'y of Labor*, 674 F.2d 1177 (7th Cir. 1982). That court merely concluded that the safety regulation before it was clear enough that "industry practice" had no bearing on its interpretation. *Id.* at 1186-87. The court did not suggest that specific evidence about the practicality (or in this case, the "suitability") of a safety measure was irrelevant. Mr. Barkhadle has offered no authority that would prevent the court (or a jury) from considering evidence about the practicality of the safety measures Mr. Windsor proposes.

Before concluding, the court instructs the parties to meet and confer regarding several issues, and to address those issues in their trial briefs, jury instructions, and other pretrial submissions. First, the parties should be prepared to offer all relevant authority bearing on the interpretation of the Coast Guard regulation. Second, the parties must

---

[1] The court notes that no party suggests that Mr. Doherty's opinions are beyond the scope of lay opinion testimony that the rules of evidence permit. *See* Fed R. Evid. 701.

[2] Mr. Barkhadle asserts that the court, not a jury, should decide questions about Defendants' compliance with the Coast Guard regulation. *See* Dkt. # 55 at 2 ("'Suitability' is a clear issue of law to be resolved by the Court."). He offers no authority for this proposition, and therefore no reason for the court to depart from the ordinary rule that a jury decides factual disputes.

ORDER – 6

discuss whether it is advantageous to have a trier of fact resolve whether the *Fuszek* rule applies before introducing evidence of Mr. Barkhadle's comparative fault. Third, the parties must ensure that the visual aids that they use to depict the Toyo 550 are of high enough quality to permit the jury or other trier of fact to meaningfully consider them. The photographs (or reproductions of photographs) that the parties submitted in connection with this motion are of poor quality, and were therefore of limited assistance to the court.

## IV.  CONCLUSION

For the reasons stated above, the court DENIES Mr. Barkhadle's motion for partial summary judgment (Dkt. # 43).

DATED this 3rd day of September, 2008.

_____
The Honorable Richard A. Jones
United States District Judge

ORDER – 7